UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

DARRYL CLEON FORBES,

      Petitioner,

vs.                                                     Case No.  3:21-cv-1073-BJD-SJH
                                                                          3:18-cr-231-BJD-SJH

UNITED STATES OF AMERICA,

      Respondent.
_____

# ORDER

## I. INTRODUCTION

Petitioner, Darryl Cleon Forbes, a federal inmate, is proceeding *pro se* on a Motion to Vacate, Set Aside, or Correct Sentence Under 28 U.S.C. § 2255 (Civ. Doc. 1, Crim. Doc. 77; Pet. Mot.).[1] The Government opposes the Motion (Civ. Doc. 3; Gov't Resp.). Petitioner opted not to file a reply. *See* Civ. Doc. 6 at 1 (advising Petitioner would "rely on the assertions and claims in his original [M]otion").

---

[1] Citations to the record in the civil case will be denoted, "Civ. Doc.," and citations to the record in the criminal case will be denoted, "Crim. Doc." Page numbers are those assigned by the Court's electronic case management system.

Under § 2255 and Rule 8(a) of the Rules Governing § 2255 Proceedings,[2] and in accordance with Petitioner's request, *see* Pet. Mot. at 8, the Court has considered the need for an evidentiary hearing and determines that a hearing is unnecessary. *See Rosin v. United States*, 786 F.3d 873, 877 (11th Cir. 2015) ("The district court is not required to grant a petitioner an evidentiary hearing if the § 2255 motion 'and the files and records of the case conclusively show that the prisoner is entitled to no relief.'"). *See also Tejada v. Dugger*, 941 F.2d 1551, 1559 (11th Cir. 1991) (holding that a § 2255 movant is not entitled to a hearing "when his claims are merely conclusory allegations unsupported by specifics or contentions that in the face of the record are wholly incredible"). Thus, the Motion is ripe for review.

## II. BACKGROUND

On December 20, 2018, a grand jury returned an Indictment charging Petitioner with one count of conspiracy to commit wire fraud in violation of 18 U.S.C. §§ 1343 and 1349. Crim. Doc. 1 at 1–2, 5. The grand jury estimated Petitioner's ill-gotten gains totaled at least $3.6 million. *Id.* at 6. According to the Indictment, Petitioner, a Jamaican citizen, along with unnamed co-conspirators, "operated a fraudulent sweepstakes scheme in Jamaica, the

---

[2] Rule 8(a) of the Rules Governing § 2255 Proceedings expressly requires the Court to review the record, including any transcripts and submitted materials to determine whether an evidentiary hearing is warranted before resolving a § 2255 motion.

Middle District of Florida[,] and elsewhere." *Id.* at 1, 3. The grand jury found Petitioner and his co-conspirators "falsely informed victims in the United States they had won a prize in a sweepstakes and had to send money to specified accounts to pay various fees and taxes necessary to retrieve their prize[s]." *Id.* Additionally, the grand jury found Petitioner "knowingly and willfully transmit[ted] and cause[d] to be transmitted by means of wire in interstate and foreign commerce, writing, signs, signals, pictures, and sounds, in violation of 18 U.S.C. § 1343." *Id.* at 2. Under the scheme, Petitioner and co-conspirators "recruited United States residents to open bank accounts in the United States" where the fraudulently obtained funds could be deposited and then withdrawn by or transferred to Petitioner and his co-conspirators "for their own personal use." *Id.* at 4–5.

Petitioner initially entered a plea of not guilty, and a trial date was set. *See* Crim. Docs. 17, 20. However, on November 18, 2019, with the assistance of retained counsel, Petitioner entered a guilty plea at a change-of-plea hearing before the assigned Magistrate Judge. Crim. Doc. 38.[3] The Magistrate Judge's Report and Recommendation noted that the judge cautioned and examined Petitioner under oath "concerning each of the subjects mentioned in Rule 11,

---

[3] Petitioner consented to the Magistrate Judge's authority to conduct the proceedings required by Rule 11 of the Federal Rules of Criminal Procedure. *See* Crim. Doc. 39.

[and] determined that the guilty plea was knowing and voluntary." *See* Crim. Doc. 41. The transcript of the proceeding confirms as much. *See* Crim. Doc. 78.

Before accepting Petitioner's plea, the Magistrate Judge advised Petitioner that, as a foreign citizen, any statements he made at the hearing "could be used against [him]" at any future immigration proceeding and that he could have as much time as he needed to "meet privately with [his] lawyer" at any point during the proceeding. *Id.* at 4. Petitioner orally consented to the Magistrate Judge conducting the plea colloquy and acknowledged that he signed a consent form saying as much. *Id.* at 5. The Magistrate Judge questioned Petitioner about his schooling and education, and Petitioner responded that he had attended college in Jamaica. *Id.* at 6. Additionally, the Magistrate Judge asked Petitioner to confirm that he could "read, write, and understand English" and was not "currently under the influence of any drugs, alcohol, or other intoxicants," including medications. *Id.* Petitioner so confirmed. *Id.*

Petitioner testified that he did not presently suffer from mental or emotional illness, nor had he in the past, he was not presently receiving medical or mental health care, and he was not taking prescribed medications. *Id.* at 6–7. He said he understood where he was, what he was doing, "and the importance of th[e] proceeding." *Id.* at 7. His attorney had no concerns about

4

his competency to enter a guilty plea, stating, "Through my consultations with [Petitioner], I've found him to be lucid and competent." *Id.*

The Magistrate Judge explained to Petitioner that he had the right to plead not guilty and that, by entering a guilty plea, he was giving up his right to a jury trial at which he could confront and cross-examine the Government's witnesses and present a defense. *Id.* at 8–10. Petitioner acknowledged that his attorney explained to him the consequences of entering a guilty plea and "any defenses that may [have been] available to [him]." *Id.* at 9, 10. The Magistrate Judge further explained other rights Petitioner was waiving by entering a guilty plea: the right to challenge the Government's evidence; the right to appeal rulings of the Court; and his rights to vote, hold public office, serve on a jury, or own or possess a gun. *Id.* at 10–11. Petitioner said he understood "all the rights that [he has] and the rights that [he was] waiv[ing] and giv[ing] up by pleading guilty." *Id.* at 11. Petitioner further testified that he understood the nature of the charge against him:

> THE COURT:    And did you receive a copy of the indictment which sets out the charge against you?
>
> [PETITIONER]: Yes, Your Honor.
>
> THE COURT:    And has the charge been read and explained to you by your attorney?
>
> [PETITIONER]: Yes, Your Honor.
>
> THE COURT:    And have you discussed the charge and the case

in general with your attorney?

[PETITIONER]:  Yes, Your Honor.

THE COURT:    Now, you're charged with conspiracy to commit wire fraud, in violation of 18, U.S. Code, Section 1349.

Do you fully understand the charge contained in the indictment?

[PETITIONER]:  Yes, Your Honor.

THE COURT:    Do you have any questions about the charge?

[PETITIONER]:  No, Your Honor.

THE COURT:    Now, the necessary elements the government must prove beyond a reasonable doubt in order for you to be convicted on this charge are as follows: First, that two or more persons in some way or manner agreed to try to accomplish a common and unlawful plan to commit wire fraud, as charged in the indictment; and, second, that you knew the unlawful purpose of the plan and willfully joined in it.

So do you understand the elements of the charge which the government would have to prove beyond a reasonable doubt for you to be convicted?

[PETITIONER]:  Yes, Your Honor.

THE COURT:    Do you have any questions about the elements?

[PETITIONER]:  No, Your Honor.

*Id.* at 13–14. Petitioner said that he understood the maximum penalties he could face on the charge to which he was pleading guilty. *Id.* at 15. Petitioner had no questions about anything the Magistrate Judge explained to him, and he acknowledged that he "fully discussed all the[] matters with [his] attorney." *Id.* He then formally entered a plea of guilty:

6

> THE COURT:    And how do you plead, guilty or not guilty, to Count One of the indictment?
>
> [PETITIONER]:  Guilty.
>
> THE COURT:    And are you pleading guilty because you are guilty?
>
> [PETITIONER]:  Yes, Your Honor.
>
> THE COURT:    And do you now admit that you committed the acts set forth in the charge?
>
> [PETITIONER]:  Yes, Your Honor.
>
> THE COURT:    And do you understand that a plea of guilty admits the truth of the charge against you?
>
> [PETITIONER]:  Yes, Your Honor.
>
> THE COURT:    And is your plea entered with an understanding of what you're doing here today?
>
> [PETITIONER]:  Yes, Your Honor.

*Id.* at 15–16. The Government proffered the facts supporting the charge as follows:

> Darryl Cleon Forbes, during the course of this conspiracy, was a Jamaican citizen residing in Jamaica. From early 2015 until December 2017, Mr. Forbes and others operated a fraudulent sweepstakes scheme in Jamaica and in the Middle District of Florida and elsewhere.
>
> Mr. Forbes and his co-conspirators falsely informed victims in the United States that they had won a prize in a sweepstakes and had to send money to specified bank accounts to pay various fees and taxes necessary to retrieve their prize.
>
> Conspirators, posing as United States government officials, falsely informed victims that they had won a prize in a sweepstakes and had to send money to specified accounts to pay

various fees and taxes necessary to retrieve their prize. The conspirators also received victim funds from the Middle District of Florida by making and directing ATM transactions in Jamaica and elsewhere.

The defendant and his co-conspirators targeted victims who were residents of the United States and, using aliases, falsely informed those victims by telephone that they had won a prize in a sweepstakes contest. The defendant and his co-conspirators then falsely told their victims that in order to receive their prize, the victims had to send money via Western Union or MoneyGram wire transfers, bank wire transfers, and other methods to representatives in the United States to prepay fees and taxes on the prize.

The defendant and his co-conspirators further induced the victims to send money by falsely representing that they were representatives of a United States government agency, such as the Federal Bureau of Investigation or the Department of Treasury, charged with verifying sweepstakes prizes, verifying the fees and taxes, and ensuring the sweepstakes winners would receive their purported prize money.

When a victim agreed to send money, the defendant and his co-conspirators instructed the victim to send a wire transfer or a check to the designated co-conspirator or to deposit money in a predesignated bank account set up by the co-conspirators to receive and distribute the fraudulently solicited funds.

The defendant and his co-conspirators also recruited United States residents to open bank accounts in the United States to be used for the deposit and transfer of fraudulently obtained funds.

To facilitate the scheme, the defendant and his co-conspirators obtained personal identifying information of victims. The defendant and his co-conspirators then transferred or directed others to transfer victim funds to co-conspirators in Jamaica and elsewhere for the purpose of making ATM withdrawals.

The defendant and his co-conspirators also instructed scheme participants to withdraw money from illicit accounts and give the funds directly to co-conspirators in Jamaica and

elsewhere.

       After the defendant and his co-conspirators had successfully induced a victim to send money, the defendant and his co-conspirators telephoned the victim repeatedly to "reload" him or her, that is, to make further false and fraudulent misrepresentations in an effort to induce the victim to send more money by wire or bank transfer.

       Such false and fraudulent misrepresentations included, but were not limited to, statements that the victim had to send additional fees and taxes to ensure the safe delivery of the prize. This practice would continue as long as the victim continued to send money.

       No victim of the conspiracy ever received a promised prize. The defendant and his co-conspirators kept all victim funds for their own personal benefit. The loss to the victims of this scheme is between 2.5 and 3.5 million dollars.

*Id.* at 16–19. At the conclusion of the factual proffer, the Court asked Petitioner, "And is that what you did"? *Id.* at 19. Petitioner replied, "Yes, Your Honor." *Id.* Petitioner "admit[ted] the truth of the factual basis and that all of the elements thereof [were] true and correct" as pertained to him. *Id.*

THE COURT:    I'm going to ask you the personalization of elements.

Beginning in or about early 2015 and continuing to in or about December 2017, did you and at least one other person, in some way or manner, agree to try to accomplish a common and unlawful plan to commit wire fraud?

[PETITIONER]:  Yes, Your, Honor.

THE COURT:    And did you know the unlawful purpose of the plan and willfully join in it?

[PETITIONER]:  Yes, Your Honor.

> THE COURT:    I find a factual basis for the plea.
>
> Is your plea free and voluntary?
>
> [PETITIONER]:   Yes, Your Honor.

*Id.* at 19–20. Petitioner agreed that he had not been threatened, forced, coerced, or intimidated into entering his plea, and he was "satisfied" with his attorney, with whom he had "had enough time to talk . . . about [the] case." *Id.* at 20–21.

The Magistrate Judge found that Petitioner was "alert and intelligent," understood the charge against him and the possible penalties, and "appreciate[d] the consequences of pleading guilty." *Id.* at 23. Further, the judge found the Government's proffer satisfied "all of the essential elements of the crime to which [Petitioner] . . . pleaded." *Id.* Finally, the judge found that Petitioner's decision to enter a guilty plea was "freely, voluntarily, knowingly, and intelligently made and that [he] had the advice and counsel of a competent lawyer with whom [he was] satisfied." *Id.* Petitioner agreed with the Magistrate Judge's findings. *Id.*

In the written Report and Recommendation, the Magistrate Judge recommended that the undersigned accept Petitioner's guilty plea, adjudicate Petitioner guilty, and sentence him. *See* Crim. Doc. 41. Noting that Petitioner waived the fourteen-day objection period, the undersigned adopted the Magistrate Judge's Report and Recommendation and adjudicated Petitioner

10

guilty as charged. *See* Crim. Doc. 43.

Petitioner's sentencing hearing was convened on August 17, 2020. *See* Crim. Doc. 64 (minute entry). The Court sentenced Petitioner to sixty-six months in prison followed by three years of supervised release and granted the Government's motion that Petitioner forfeit $2.5 million in proceeds he fraudulently obtained. Crim Docs. 64, 65, 66. Petitioner did not seek an appeal, so, on September 10, 2020, the Court *sua sponte* ordered Petitioner to file a "written declaration that the decision not to file a notice of appeal was his informed and voluntary choice," or, if not, to so advise the Court in a written statement. Crim. Doc. 72. Petitioner did not respond to the Order. As was explained in the Order, Petitioner's failure to respond was "deemed by the Court to be an acknowledgment by [him] that the decision not to pursue an appeal was his informed and voluntary choice." *Id.*

## III.  STANDARD OF REVIEW

Under Title 28, United States Code, § 2255, a person in federal custody may move to vacate, set aside, or correct his sentence on one of four grounds: (1) the sentence was imposed in violation of the Constitution or laws of the United States; (2) the court lacked jurisdiction to impose the sentence; (3) the imposed sentence exceeded the maximum authorized by law; or (4) the imposed sentence is otherwise subject to collateral attack. 28 U.S.C. § 2255(a). Only

jurisdictional claims, constitutional claims, and claims of error that are so fundamentally defective as to cause a complete miscarriage of justice will warrant relief through collateral attack. *United States v. Addonizio*, 442 U.S. 178, 184–86 (1979). The movant "bears the burden to prove the claims in his § 2255 motion." *Rivers v. United States*, 777 F.3d 1306, 1316 (11th Cir. 2015). *See also Beeman v. United States*, 871 F.3d 1215, 1221 (11th Cir. 2017).

"It is well settled that a voluntary and intelligent plea of guilty made by an accused person, who has been advised by competent counsel, may not be collaterally attacked." *Bousley v. United States*, 523 U.S. 614, 621 (1998) (quoting *Mabry v. Johnson*, 467 U.S. 504, 508 (1984)). A petitioner may collaterally challenge "the voluntariness and intelligence of a guilty plea" but only if he first advanced such an argument on direct appeal. *Id.* "Habeas review is an extraordinary remedy and 'will not be allowed to do service for an appeal.'" *Id.* (quoting *Reed v. Farley*, 512 U.S. 339, 354 (1994)).

"[A] defendant generally must advance an available challenge to a criminal conviction or sentence on direct appeal or else the defendant is barred from presenting that claim in a § 2255 proceeding." *Lynn v. United States*, 365 F.3d 1225, 1234–35 (11th Cir. 2004). "This rule generally applies to all claims, including constitutional claims." *Id.* However, the Supreme Court has held that the procedural default rule does not apply to ineffective assistance of

counsel claims. *See Massaro v. United States*, 538 U.S. 500, 504 (2003) ("[A]n ineffective-assistance-of-counsel claim may be brought in a collateral proceeding under § 2255, whether or not the petitioner could have raised the claim on direct appeal.").

To avoid a procedural bar, a petitioner "must show cause for not raising the claim of error on direct appeal *and* actual prejudice from the alleged error," or he must demonstrate he "is actually innocent." *Id.* (citing *Bousley*, 523 U.S. at 622). The ineffective assistance of counsel may satisfy the "cause" prong of the first exception, but the claim must be a valid one. *Fortenberry v. Haley*, 297 F.3d 1213, 1222 (11th Cir. 2002) ("A petitioner can establish cause by showing that a procedural default was caused by constitutionally ineffective assistance of counsel . . . ."). Under the second exception—actual innocence—a petitioner must demonstrate his factual innocence and "show that it is more likely than not that no reasonable juror would have convicted him." *Id.* (quoting *Schlup v. Delo*, 513 U.S. 298, 327 (1995)).

The United States Constitution provides criminal defendants the right to the effective assistance of counsel. *See* U.S. Const., amend. VI. As such, a claim that a criminal defendant has received the ineffective assistance of counsel in violation of the Sixth Amendment may properly be brought in a collateral proceeding under § 2255. *Massaro*, 538 U.S. at 504. To establish the

ineffective assistance of counsel, a petitioner must satisfy two prongs: (1) that his counsel's conduct amounted to constitutionally deficient performance; and (2) that counsel's deficient performance prejudiced his defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984); *Martin v. United States*, 949 F.3d 662, 667 (11th Cir. 2020).

In assessing the "performance" prong, courts adhere to the standard of reasonably effective assistance. *Weeks v. Jones*, 26 F.3d 1030, 1036 (11th Cir. 1994) (citing *Strickland*,466 U.S. at 688). Under this standard, a review of counsel's performance is highly deferential. *Chandler v. United States*, 218 F.3d 1305, 1314 (11th Cir. 2000).

> The test has nothing to do with what the best lawyers would have done. Nor is the test even what most good lawyers would have done. We ask only whether some reasonable lawyer at the trial could have acted, in the circumstances, as defense counsel acted at trial…. We are not interested in grading lawyers' performances; we are interested in whether the adversarial process at trial, in fact, worked adequately.

*Waters v. Thomas*, 46 F.3d 1506, 1512 (11th Cir. 1995) (quoting *White v. Singletary*, 972 F.2d 1218, 1220–21 (11th Cir. 1992)). To establish his attorney was deficient under the highly deferential *Strickland* standard, a petitioner must show that, given all the circumstances, counsel's performance fell "outside the wide range of professionally competent assistance." *Scott v. United*

14

*States*, 890 F.3d 1239, 1258 (11th Cir. 2018) (quoting *Payne v. Allen*, 539 F.3d 1297, 1315 (11th Cir. 2008)).

To satisfy the "prejudice" prong, a petitioner must show a reasonable probability that, but for counsel's error, the result of the proceeding would have been different. *Martin*, 949 F.3d at 667 (citing *Padilla v. Kentucky*, 559 U.S. 356, 366 (2010)). A reasonable probability is one sufficient to undermine confidence in the outcome. *Strickland*, 466 U.S. at 694. "It is not enough for the [petitioner] to show that the error had some conceivable effect on the outcome of the proceeding." *United States v. Phillips*, 853 F. App'x at 626 (citing *Strickland*, 466 U.S. at 693)).

There is no "iron-clad rule requiring a court to tackle one prong of the *Strickland* test before the other." *Ward v. Hall*, 592 F.3d 1144, 1163 (11th Cir. 2010). Since both prongs of the two-part *Strickland* test must be satisfied to show a Sixth Amendment violation, "a court need not address the performance prong if the petitioner cannot meet the prejudice prong, and vice-versa." *Id.* (citing *Holladay v. Haley*, 209 F.3d 1243, 1248 (11th Cir. 2000)). As stated in *Strickland*, "If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed." 466 U.S. at 697.

15

The two-part *Strickland* test applies to challenges to the validity of guilty pleas based on ineffective assistance of counsel. *Hill v. Lockhart*, 474 U.S. 52, 58 (1985). The petitioner must still show that counsel's performance was deficient. *See id.* at 56–59; *Lynch v. Sec'y Fla. Dept. of Corr.*, 776 F.3d 1209, 1218 (11th Cir. 2015). To establish prejudice, however, the petitioner "must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill*, 474 U.S. at 59 (footnote omitted); *Lynch*, 776 F.3d at 1218.

## IV. DISCUSSION

Petitioner's Motion is not a model of clarity. He conflates multiple claims in a single ground for relief, asserting as follows: "Petitioner entered an involuntary plea of guilty after his attorney affirmatively misrepresented to him the law and jurisdiction in the U.S. District Court was absent." *See* Pet. Mot. at 3. Construing his Motion as a whole, the Court understands Petitioner to be challenging (1) the voluntariness of his plea, (2) his attorney's representation of him in connection with his plea, (3) the district court's subject matter jurisdiction, and (4) the sufficiency of the Indictment.

Petitioner's overarching complaint is that his attorney was ineffective for failing to object to the Indictment. First, he contends the "district court [was] without jurisdiction to accept [his] guilty plea [because] the Indictment

16

charged a non-offense." *Id.* at 4 (capitalization omitted). Petitioner explains that the Indictment charged him with "conspiracy to attempt" to commit wire fraud, which is an "illogical and nonexistent" crime. *Id.* at 4–5 (citing *United States v. Tomeny*, 144 F.3d 749 (11th Cir. 1998); *United States v. Meacham*, 626 F.2d 503 (5th Cir. 1980)).[4] Petitioner complains that his attorney's "failure to object to this jurisdictional defect deprived [him] of his right to effective assistance of counsel." *Id.* at 5. He claims that had he known the Indictment charged him with a non-offense, he would have insisted on proceeding to trial. *Id.* at 6.

Next, Petitioner argues his attorney was ineffective for improperly advising him that § 1349 could be applied extraterritorially. *Id.* at 7–8. He explains that all acts by him occurred outside the United States, and § 1349 "makes absolutely no mention of its reach to conduct occurring abroad." *Id.* at 7. Petitioner maintains that had his attorney "objected to the extraterritorial application of [§] 1349 . . . the Court would have sustained [the] objection and dismissed the [I]ndictment." *Id.*

The Government construes Petitioner's argument as raising two claims: that his counsel was ineffective; and that his plea was involuntary. *See* Gov't

---

[4] In *Bonner v. City of Prichard, Ala.*, 661 F.2d 1206, 1207 (11th Cir. 1981), the Eleventh Circuit adopted as binding precedent decisions of the former Fifth Circuit rendered prior to October 1, 1981.

Resp. at 7, 10. The Government construes the ineffective assistance of counsel claim to be related to counsel's pre-plea advice or conduct and argues the claim is procedurally barred because Petitioner pled guilty. *Id.* at 10. Additionally, the Government argues the claim that Petitioner's plea was involuntary lacks merit or was procedurally defaulted because Petitioner did not appeal his conviction. *Id.* at 9–10. Petitioner does not counter the Government's arguments. Indeed, he opted not to file a Reply.

The Court construes Petitioner's ineffectiveness claim to be one connected to Petitioner's decision to plead guilty, *see* Pet. Mot. at 3–5, which would not be procedurally defaulted for Petitioner's failure to appeal, *see Massaro*, 538 U.S. at 504. *Cf. Wilson v. United States*, 962 F.2d 996, 997 (11th Cir. 1992) (holding the district court did not err in dismissing the petitioner's ineffective assistance claim because the petitioner's guilty plea was voluntary and knowing and his ineffectiveness claim was "not about his decision to plead guilty"). Regardless of whether Petitioner's ineffectiveness claim is related to his decision to plead guilty, it is without merit.

## A. Ineffective Assistance of Counsel

As noted, the gravamen of Petitioner's Motion is that he was charged with a non-offense and charged under a statute that has no extraterritorial application—facts he did not know when he entered his guilty plea because his

attorney allegedly rendered the ineffective assistance of counsel by failing to object or properly advise him. *See* Pet. Mot. at 4, 6. Whether his attorney was ineffective for not objecting to the Indictment depends first on whether Petitioner is correct that the Indictment was deficient so as to deprive the Court of subject matter jurisdiction. He is not.

### i.   Subject Matter Jurisdiction

With respect to Petitioner's assertion that he was charged with a non-offense, he relies heavily on *Meacham*, *see* Pet. Mot. at 4–5, which held the defendant's guilty plea did not bar him from challenging his conviction on appeal because the indictment did not charge him with an offense, *see Meacham*, 626 F.2d at 510. The court ruled, "The objection that an indictment fails to charge an offense is not waived by a guilty plea." *Id. See also Tomeny*, 144 F.3d at 751 ("[A] claim that the indictment failed to charge an offense is a jurisdictional claim not waived by the entry of a guilty plea.").

The indictment in *Meacham* was deficient because the government interpreted the statutes relating to controlled substances incorrectly, which resulted in the defendants being charged with a non-offense. 626 F.2d at 508. The court explained that, based on the evidence, the defendants could have properly been charged under the statutes as written, but instead, the government charged them with "something new": "[T]he government

successfully could have prosecuted the appellants on charges of conspiring to import, of conspiring to possess with intent to distribute, of attempting to import[,] or of attempting to possess with intent to distribute. But the government instead charged something new[:] conspiracy to attempt." *Id.* at 507.

The holding in *Meacham* is exceedingly narrow, as explained by the Eleventh Circuit: "the . . . indictment [in *Meacham*] contained affirmative allegations of conduct that was not a crime against the laws of the United States," and therefore, did not invoke the court's jurisdiction. *See United States v. Brown*, 752 F.3d 1344, 1352 (11th Cir. 2014) (analyzing in detail the difference between jurisdictional and non-jurisdictional defects in an indictment). The central inquiry for determining if a district court has subject matter jurisdiction over a criminal matter is "whether the indictment alleges 'offenses against the laws of the United States.'" *United States v. Moore*, 954 F.3d 1322, 1333 (11th Cir. 2020). "The standard . . . is not demanding. An indictment tracking the statutory language and stating approximately the time and place of an alleged crime is sufficient." *Id.* at 1332.

The Indictment in Petitioner's case charged him under § 1349 with conspiracy to commit the substantive offense prohibited under § 1343—wire fraud. *See* Crim. Doc. 1. As such, he was charged with an offense against the

20

laws of the United States. Section 1349 provides, "Any person who attempts or conspires to commit any offense under this chapter shall be subject to the same penalties as those prescribed for the offense, the commission of which was the object of the attempt or conspiracy." Section 1343 sets out the substantive offense Petitioner was charged with *conspiring* to commit. That section provides as follows:

> Whoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, transmits or causes to be transmitted by means of wire, radio, or television communication in interstate or foreign commerce, any writings, signs, signals, pictures, or sounds for the purpose of executing such scheme or artifice, shall be fined under this title or imprisoned not more than 20 years, or both.

18 U.S.C. § 1343.

Petitioner points to a single phrase in one paragraph of the Indictment in support of his argument that he was charged with a non-offense. That paragraph, which Petitioner partially quotes, provides in full as follows:

> [Petitioner] did knowingly and willfully combine, conspire, and agree with persons known and unknown . . . to knowingly and willfully devise a scheme and artifice to defraud and to obtain money and property by means of materially false and fraudulent pretenses, representations, and promises, and for purposes of executing <u>and attempting to execute</u> the scheme and artifice to defraud, did knowingly and willfully transmit and cause to be transmitted by means of wire in interstate and foreign commerce, writing, signs, signals, pictures, and sounds, in violation of 18 U.S.C. § 1343.

Crim. Doc. 1 at 2 (emphasis added). The emphasized language is that with which Petitioner takes issue. He concludes that the inclusion of the phrase "attempting to execute" can be "[f]airly read" as charging him with "conspiracy to attempt to commit wire fraud," which he says is not a crime. Pet. Mot. at 4 (internal quotation marks omitted).

Contrary to Petitioner's strained reading of a single phrase out of context, the Indictment did not charge him with a non-offense, as was the case in *Meacham*. Instead, Petitioner was charged under a valid provision of the United States Code—conspiracy to commit wire fraud—and the Indictment tracked the pertinent statutory language, with citations to the relevant statutory provisions, §§ 1343 and 1349. *See* Crim. Doc. 1 at 2, 5. Additionally, the Indictment "contained affirmative allegations of conduct" that satisfied all the elements of the charge. *See Brown*, 752 F.3d at 1352. For instance, it explicitly detailed the "Manner and Means of the Conspiracy," including the times and places of the acts that violated the relevant statutory provisions. *Id.* at 3–5. A complete reading of the seven-page Indictment leaves no doubt that Petitioner was charged with conspiracy to commit wire fraud in violation of §§ 1343 and 1349.

Even assuming arguendo that the Indictment had been "defective," a defect in an indictment does not strip a district court of subject matter

22

jurisdiction. *United States v. Cotton*, 535 U.S. 625, 630 (2002) ("[D]efects in an indictment do not deprive a court of its power to adjudicate a case.). *See also Brown*, 758 F.3d at 1354 ("So long as the indictment charges the defendant with violating a valid federal statute as enacted in the United States Code, it alleges an 'offense against the laws of the United States' and, thereby, invokes the district court's subject-matter jurisdiction."). Here, the Indictment charged Petitioner with an offense against the laws of the United States and "contained affirmative allegations of conduct" that satisfied all the elements of the charge. As such, the Court had subject matter jurisdiction to accept his plea. It follows that Petitioner's attorney could not have been deficient for not objecting to the Indictment for the reason Petitioner now advances. Finding no deficient performance by Petitioner's counsel, the Court finds Petitioner's ineffectiveness claim to be without merit.

## ii.    Extraterritoriality

With respect to Petitioner's assertion that § 1349 does not apply extraterritorially, he asserts that, at all material times, he "resided outside the United States," and any "agreement" with his co-conspirators "occurred exclusively outside the United States." *See* Pet. Mot. at 6. He claims his attorney's advice that he could be charged under § 1349 even though he was not present in the United States was "fatally flawed." *Id.*

Unless a statute expressly provides that it applies to conduct outside the United States, courts presume that the statute "is meant to apply only within the territorial jurisdiction of the United States." *See United States v. Rolle*, 65 F.4th 1273, 1276 (11th Cir. 2023) (quoting *United States v. Belfast*, 611 F.3d 783, 811 (11th Cir. 2010)). However, the Supreme Court has "held that the presumption against extraterritoriality does not apply 'to criminal statutes which are, as a class, not logically dependent on their locality for the government's jurisdiction, but are enacted because of the right of the government to defend itself against obstruction, or fraud wherever perpetrated ....'" *Id.* (quoting *United States v. Bowman*, 260 U.S. 94, 98 (1922)). In accordance with the Supreme Court's decision in *Bowman*, the Eleventh Circuit has "long recognized . . . the rule that Congress need not expressly provide for extraterritorial application of a criminal statute if the nature of the offense is such that it may be inferred." *Id.* (citing cases).

The Eleventh Circuit has not decided whether § 1349 applies extraterritorially, but rulings from other cases refute Petitioner's argument that he cannot have been criminally charged in the United States because he took no overt act himself in the country. *See United States v. Inco Bank & Tr. Corp.*, 845 F.2d 919, 920 (11th Cir. 1988). For instance, the Eleventh Circuit has held, "It is well settled that the government has the power to prosecute

every member of a conspiracy that takes place in United States territory, even those conspirators who never entered the United States." *Id. See also United States v. Plummer*, 221 F.3d 1298, 1304–05 (11th Cir. 2000) ("On authority of *Bowman,* courts in this Circuit and elsewhere have routinely inferred congressional intent to provide for extraterritorial jurisdiction over foreign offenses that cause domestic harm."); *United States v. MacAllister*, 160 F.3d 1304, 1308 (11th Cir. 1998) ("The objective territorial principle applies where the defendant's actions either produced some effect in the United States, or where he was part of a conspiracy in which any conspirator's overt acts were committed within the United States' territory.").

Petitioner was charged under § 1349 with conspiracy to commit the underlying substantive offense of wire fraud pursuant to § 1343. By its very terms, "the wire fraud statute punishes frauds executed 'in interstate or foreign commerce,' so [it] is surely not a statute in which Congress had only 'domestic concerns in mind.'" *Pasquantino v. United States*, 544 U.S. 349, 371–72 (2005) (internal citation omitted) (quoting first 18 U.S.C. § 1343 and then *Small v. United States*, 544 U.S. 385, 388 (2005)). "[E]xtraterritorial jurisdiction over a conspiracy charge exists whenever the underlying substantive crime applies to extraterritorial conduct." *United States v. Belfast*, 611 F.3d 783, 813 (11th Cir. 2010). In an unpublished opinion, the Eleventh

Circuit held that the petitioner's case "involved a permissible domestic application" of the wire fraud statute, § 1343, even if some of the conduct occurred abroad, because the statute criminalizes the act of "transmitting." *Skillern v. United States*, No. 20-13380-H, 2021 WL 3047004, at *8 (11th Cir. Apr. 16, 2021).

Here, as the Indictment described, the charge against Petitioner was based on conduct that occurred and injuries sustained within the United States, even though he lived and orchestrated the scheme from abroad. *See generally* Crim. Doc. 1. The Indictment alleged that interstate wires were used to defraud victims in the United States. The Indictment provided in relevant part:

> 1.    Defendant Darryl Cleon Forbes, a Jamaican citizen residing in Jamaica and elsewhere, together with his co-conspirators, operated a fraudulent sweepstakes scheme in Jamaica, the Middle District of Florida and elsewhere. Forbes and his co-conspirators[] falsely informed victims in the United States that they had won a prize in a sweepstakes and had to send money to specified accounts to pay various fees and taxes necessary to retrieve their prize. Forbes also received from the Middle District of Florida victim funds by making and directing ATM transactions in Jamaica and elsewhere.
>
> . . . .
>
> [5.]a. Beginning in early 2015, the defendant[] and [his] co-conspirators operated a fraudulent sweepstakes scheme in Jamaica, the Middle District of Florida, and elsewhere;

b.    The defendant and his co-conspirators would target victims who were residents of the United States and, using aliases, would falsely inform those victims by telephone that they had won a prize in a sweepstakes contest. The defendant and his co-conspirators would then falsely tell their victims that in order to receive their prize, the victims had to send money via Western Union or MoneyGram wire transfers, bank wire transfers, and other methods to "representatives" in the United States to prepay fees and taxes on the prize;

. . . .

d.    If a victim agreed to send money, the defendant and his co-conspirators would instruct the victim to send a wire transfer or check to a designated co-conspirator, or deposit money in a predesignated bank account set up by co-conspirators to receive and distribute the fraudulently solicited funds;

e.    The defendant and his co-conspirators recruited United States residents to open bank accounts in the United States to be used for the deposition and transfer of fraudulently obtained funds;

. . . .

g.    The defendant and his co-conspirators would transfer or direct others to transfer victim funds to co-conspirators in Jamaica and elsewhere for the purpose of making ATM withdrawals;

. . . .

*Id.* at 1, 3–5.

At Petitioner's sentencing hearing, the Court heard argument on Petitioner's objection to the presentence investigation report, during which facts supporting each element of the crime charged were again put on the record. *See* Crim. Doc. 79 at 6. At the hearing, the Government proffered the testimony of the case agent, Robert Schwinger, who testified that the

27

investigation of Petitioner's and his co-conspirators' scheme uncovered "well over a hundred victims" in the United States with a total loss of at least $2.5 million. *Id.* at 12, 21–22. According to Agent Schwinger, Petitioner "was at the center of the operation that recruited people in [the U.S.] to open bank accounts." *Id.* at 23. Petitioner also coordinated deposits into the various bank accounts, alerted his co-conspirators to accounts that were "hot" (compromised) or should no longer be used, and directed others when and where to withdraw certain amounts of cash at various ATMs around Montego Bay, Jamaica. *Id.* at 25–27. The investigation revealed that all the money taken from the numerous victims "was going back to [Petitioner] or his close associates." *Id.* at 27. Because Petitioner properly was charged under §§ 1343 and 1349 for a conspiracy that had domestic harm, even though he allegedly never entered the United States, his attorney cannot have been ineffective for not objecting to the Indictment based on extraterritoriality concerns.

For the reasons stated, Petitioner's ineffective assistance of counsel claims lack merit.

## B. Procedural Default

To the extent Petitioner seeks to assert any other claims—such as a stand-alone claim that the Indictment was defective or insufficient, or that his plea was unknowing and involuntary—those claims are procedurally defaulted

for his failure to directly appeal his conviction and sentence. As noted, Petitioner did not file a Reply, so he does not directly rebut the Government's procedural default argument. However, affording Petitioner the benefit of liberal construction, he appears to invoke the "cause and prejudice" exception to the procedural default rule by claiming that he did not appeal because "counsel did not consult [with him] regarding appealing, and [he] did not have the wherewithal to initiate or prosecute an appeal on his own." *See* Pet. Mot. at 2.

A petitioner may demonstrate "cause" under the procedural default rule if he demonstrates his failure was attributable to the ineffective assistance of counsel, but the ineffective assistance claim "must have merit." *United States v. Nyhuis*, 211 F.3d 1340, 1344 (11th Cir. 2000). Petitioner's vague and conclusory ineffective assistance of counsel claim lacks merit. He does not assert that he asked his attorney to file an appeal, or that he indicated to his attorney an interest in appealing, but his attorney failed to represent him. *See Thompson v. United States*, 504 F.3d 1203, 1206 (11th Cir. 2007) ("[A]dequate consultation requires informing a client about his right to appeal, advising the client about the advantages and disadvantages of taking an appeal, *and* making a reasonable effort to determine whether the client wishes to pursue an appeal, regardless of the merits of such an appeal.").

29

The plea transcript suggests Petitioner's attorney consulted with him about his rights, including the right to appeal. In conducting the plea colloquy, the Magistrate Judge confirmed that Petitioner entered his plea with the assistance of counsel, with whom he was satisfied. *See* Crim. Doc. 78 at 21. The Magistrate Judge asked Petitioner if he had "had enough time to talk with [his attorney]" and was "satisfied with [his] lawyer." *Id.* Petitioner replied, "Yes, Your Honor." *Id.* Additionally, the Magistrate Judge asked Petitioner's attorney the following: "[A]re you satisfied that your client knows what he's charged with, that you've had sufficient time to counsel with him, and that he is pleading guilty freely and voluntarily, with full knowledge of the consequences of his plea?" *Id.* at 23. Counsel responded, "Yes, Your Honor." *Id.*

Assuming Petitioner's attorney did not consult with him about his right or desire to appeal, as Petitioner asserts, any such oversight could not have prejudiced him because, at his sentencing hearing, the Court advised Petitioner he had "the right to appeal from the judgment and sentence . . . within 14 days from the entry of the judgment," and his failure to do so would "be treated as a waiver of [the] right to appeal." *See* Crim. Doc. 79 at 80. *See also* Crim. Doc. 64 at 1. The Court further advised him that "if [he could] not afford an attorney for purposes of taking an appeal, one [would] be appointed for [him]." *See* Crim. Doc. 79 at 80.

30

After his fourteen-day period in which to appeal had elapsed with no notice of appeal being filed, the Court issued an Order directing Petitioner to file "a written declaration [stating] that the decision not to file a notice of appeal was his informed and voluntary choice," and advising him that his failure to do so would "be deemed . . . to be an acknowledgment by [him] that the decision not to pursue an appeal was his informed and voluntary choice." *See* Order (Doc. 72). A Deputy United States Marshal personally delivered a copy of the Order to Petitioner at the Baker County Detention Center. *See* Return of Service (Doc. 73) at 3. Petitioner did not file a written declaration in response to this Order. As such, his failure was deemed "an acknowledgment by [him] that the decision not to pursue an appeal was his informed and voluntary choice," not the result of the ineffective assistance of counsel. *See* Order (Doc. 72). In other words, Petitioner does not show that "but for counsel's [alleged] deficient conduct, he would have appealed." *See Roe v. Flores-Ortega*, 528 U.S. 470 (2000). In light of the above, the Court finds Petitioner's ineffective assistance claim insufficient to excuse his procedural default.

Petitioner does not advance an actual innocence argument, *see generally* Pet. Mot., and his statements made under oath at the plea hearing demonstrate he was not wrongly accused of the crime to which he pled guilty. *See Sawyer v. Whitely*, 505 U.S. 333, 340 (1992) ("A prototypical example of

31

'actual innocence' in a colloquial sense is the case where the [government] has convicted the wrong person of the crime."). Petitioner admitted having engaged in the conduct with which he was charged, as summarized by the Government during the factual proffer and by the Magistrate Judge in accepting his plea. *See* Crim. Doc. 78 at 15–20. He does not offer or point to any "new reliable evidence" showing it "is more likely than not that no reasonable juror would have found [him] guilty beyond a reasonable doubt." *See Schlup*, 513 U.S at 324, 327, 329. Thus, insofar as Petitioner seeks to assert any other claims—such as a stand-alone claim that the Indictment was defective or insufficient, or that his plea was unknowing and involuntary—those claims are procedurally defaulted.

### C. Voluntariness of Plea

Finally, even if Petitioner had not procedurally defaulted any non-jurisdictional claims, he waived them by pleading guilty, *see United States v. Fairchild*, 803 F.2d 1121, 1124 (11th Cir. 1986) ("A guilty plea, since it admits all the elements of a formal criminal charge, waives all nonjurisdictional defects in the proceedings against a defendant."), or they are otherwise meritless. Petitioner's claim challenging the Indictment lacks merit for the reasons previously stated, and a claim challenging the voluntariness of the plea lacks merit for the following reasons.

32

To the extent Petitioner's involuntariness argument is grounded in the premise that his attorney did not advise him of purported defects in the Indictment, his claim is baseless because the underlying premise is baseless, as previously addressed. Regardless, as demonstrated by the exhaustive plea colloquy the Magistrate Judge undertook in accordance with Rule 11, Petitioner entered a knowing and voluntary plea. *See* Crim. Doc. 41. *See also generally* Crim. Doc. 78. At the plea hearing, Petitioner was represented by counsel and demonstrated he was educated; could read, write, and understand English; was not under the influence of intoxicants or medications; did not suffer from mental illness; and understood the nature of the charge and the proceeding. *See* Crim. Doc. 78 at 6–7, 13–15. Petitioner also stated that he understood the rights he was waiving by pleading guilty. *Id.* at 8–11. Petitioner agreed that he understood "the maximum penalties [he] face[d] on the charge," including that property was subject to forfeiture and that he could be required to "make restitution to any victims." *Id.* at 14–15.

The Magistrate Judge reviewed the factual basis for the plea by proffer by the Government, and then asked Petitioner if he engaged in the conduct described. *Id.* at 16–19. Petitioner answered, "Yes, Your Honor." *Id.* at 19. The Magistrate Judge directly asked Petitioner whether he engaged in conduct satisfying the essential elements of the crime: (1) "Beginning in or about early

2015 and continuing to in or about December 2017, did you and at least one other person, in some way or manner, agree to try to accomplish a common and unlawful plan to commit wire fraud?"; and (2) "[D]id you know the unlawful purpose of the plan and willfully join in it?" *Id.* at 19–20. Petitioner responded affirmatively to both questions. *Id.* at 20. Accordingly, the Magistrate Judge found "a factual basis for the plea," and asked Petitioner if he entered it freely and voluntarily, without having been threatened, forced, coerced, or intimidated. *Id.* Petitioner agreed his plea was free and voluntary and not the result of threats, force, coercion, or intimidation. *Id.*

At the conclusion of the plea colloquy, the Magistrate Judge made the following findings:

> I find that you are now alert and intelligent, that you understand the nature of the charge against you and the possible penalties, and you appreciate the consequences of pleading guilty. I also find the facts which the government is prepared to prove and which by your plea of guilty you admit state all of the essential elements of the crime to which you have pleaded guilty. I further find that your decision to plead guilty is freely, voluntarily, knowingly, and intelligently made and that you've had the advice and counsel of a competent lawyer with whom you say you are satisfied.

*Id.* at 23. The judge asked Petitioner if he agreed with these findings, and Petitioner responded, "Yes, Your Honor." *Id.*

Petitioner's plea colloquy satisfied the requirements of Rule 11, and Petitioner's admission that he entered his plea freely and voluntarily is

presumed to be true. A defendant's "representations [at a plea hearing,]. . . as well as any findings made by the judge accepting [a guilty] plea, constitute a formidable barrier in any subsequent collateral proceedings. Solemn declarations in open court carry a strong presumption of verity." *Blackledge v. Allison*, 431 U.S. 63, 74 (1977). *See also United States v. Medlock*, 12 F.3d 185, 187 (11th Cir. 1994) ("There is a strong presumption that the statements made during [a plea] colloquy are true."). Accordingly, the Court finds Petitioner's claim that he entered an involuntary guilty plea to be without merit.

## V. CONCLUSION

Finding Petitioner advances no argument warranting relief under 28 U.S.C. § 2255, it is hereby **ORDERED**:

1.    Petitioner's Motion (Civ. Doc. 1, Crim. Doc. 77) is **DENIED**, and this action is **DISMISSED WITH PREJUDICE**.

2.    The **Clerk** is directed to enter judgment denying the Motion and dismissing the action with prejudice, terminate any pending motions as moot, and close the file.

3.    If Petitioner appeals this Order, **the Court denies a certificate of appealability**.[5] Because this Court has determined that a certificate of

---

[5] This Court should issue a certificate of appealability only if a petitioner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To make this substantial showing, Petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional

appealability is not warranted, the **Clerk** shall terminate from the pending motions report any motion to proceed on appeal as a pauper that may be filed in this case. Such termination shall serve as a denial of the motion.

     **DONE AND ORDERED** at Jacksonville, Florida, this 25th day of February 2025.

                                           BRIAN J. DAVIS
                            United States District Judge

Jax-6
c:
Darryl Cleon Forbes
Counsel of Record

---

claims debatable or wrong," *Tennard v. Dretke*, 542 U.S. 274, 282 (2004) (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)), or that "the issues presented were 'adequate to deserve encouragement to proceed further,'" *Miller-El v. Cockrell*, 537 U.S. 322, 335–36 (2003) (quoting *Barefoot v. Estelle*, 463 U.S. 880, 893 n.4 (1983)). Upon due consideration, this Court will deny a certificate of appealability.

36